USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/26/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
LAURIE TIETJEN, :
:
Plaintiff, : 16-CV-7021 (JMF)
:
-v- : MEMORANDUM OPINION
: AND ORDER
UNUM LIFE INSURANCE COMPANY OF AMERICA, :
:
Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Laurie Tietjen, a former employee of Time Warner Inc. ("Time Warner"), brings suit against Defendant Unum Life Insurance Company of America ("Unum") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Unum improperly denied her application for long term disability benefits. (Docket No. 1 ("Compl.") ¶¶ 1, 5, 24, 52). Now pending is Tietjen's motion to determine the standard of review. (Docket No. 15). Tietjen argues that the Court should review Unum's decision *de novo*. By contrast, Unum argues in favor of the more deferential "arbitrary and capricious" standard. (Docket No. 24 ("Def.'s Opp'n"), at 12). For the reasons that follow, the Court agrees with Unum and concludes that the arbitrary and capricious standard applies.

## BACKGROUND

Tietjen worked as a Vice President of Strategic Communications and Branding for Time Warner, where she participated in the company's long term disability plan (the "Plan"). (Compl. ¶¶ 5, 24). In 2011, Tietjen — who claims to suffer from Lyme disease and other tick-related ailments — filed a claim for long term disability benefits under the Plan. (Compl. ¶¶ 25, 32).

Unum initially approved her claim, but conducted additional reviews of the medical evidence and ultimately concluded that her "diagnosis of Lyme disease was not supported and that there was no physical or organic cause of her reported symptoms." (Docket No. 23-3, at 3491). Thus, Unum terminated benefits on February 26, 2015, in a decision rendered by Kristie Landry, Lead Disability Benefits Specialist. (Compl. ¶¶ 22, 33, 52; Docket No. 17 ("Hess Aff."), Ex. E ("Landry Ltr.")). The decision cited the evaluations of two Independent Medical Examiners, one of whom was a neuropsychologist. (Docket No. 23-3, at 3491-92).

In August 2015, Tietjen appealed Unum's decision internally. (*Id.* at 3560). As part of the appeal process, Unum obtained additional reviews of the medical evidence from Susan Grover, a registered nurse, and Dr. Jacqueline Crawford, a neurologist. Both had full access to all of the prior medical reviews and the Independent Medical Examiner reports in Tietjen's file, including reports from an infectious disease specialist, a neurologist, and neuropsychologists who had previously evaluated Tietjen's claim. (Docket No. 23-4, at 4458-76, 4480-95). Both reviewers rejected the possibility that Tietjen's cognitive impairments or disabilities were caused by physical issues. (*Id.* at 4475, 4490). Thereafter, in a decision rendered by Phaen Stone, Lead Appeals Specialist, Unum denied the appeal. (Hess Aff., Ex. F). Significantly, Stone and Landry, who rendered the initial decision on Tietjen's claim, appear to be employees of Unum Group, an entity separate from Unum. (*See* Landry Ltr. 2; Hess Aff., Ex. B ("SPD"), at 8; (Docket No. 16 ("Pl.'s Mem."), at 7, n.3; Docket No. 25 ("Pl.'s Reply"), at 3).

## DISCUSSION

In reviewing a denial of benefits under ERISA, a court must apply a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court must apply

2

the more deferential abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *see Chau v. Hartford Life Ins. Co.*, No. 14-CV-8484 (GHW), 2016 WL 7238956, at *2 (S.D.N.Y. Dec. 13, 2016) (noting that the phrase "arbitrary and capricious" is "used interchangeably" with the term "abuse of discretion" in this context). In order to trigger the more deferential standard, a benefit plan must use "clear language" to indicate that the administrators reserve discretion to interpret and apply the plan. *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005). It is the plan administrator who bears the burden of proving that the deferential standard of review applies, as "the party claiming deferential review should prove the predicate that justifies it." *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995). Similarly, because "the plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies . . . needless ambiguity in the wording of the policy should be resolved against [the insurer]." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999); *see also Ogden Corp. v. Travelers Indem. Co.*, 681 F. Supp. 169, 173 (S.D.N.Y. 1988) ("In the field of insurance contract provisions, the general rule is to construe ambiguities in favor of the insured and against the insurer."). And finally, even if there is a grant of discretion in the plan, "[w]here an unauthorized party makes the determination, a denial of plan benefits is reviewed under the *de novo* standard." *Sharkey*, 70 F.3d at 229.

In this case, there is no dispute that the Plan explicitly granted discretionary authority to Unum (Pl.'s Mem. 1; Def.'s Opp'n 1), as it states that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (Hess Aff., Ex. A ("Policy"), at 13). The rub is that the determinations here were apparently made by employees of Unum *Group*, an

3

entity that is distinct from *Unum*. Citing that fact, Tietjen contends that the determinations were made by an unauthorized party and that the Court should therefore apply *de novo* review. (Pl.'s Mem. 1). Unum, on the other hand, points to the Additional Summary Plan Description ("SPD"), which states in relevant part that "[t]he Plan, acting through the Plan Administrator, delegates to Unum *and its affiliate Unum Group* discretionary authority to make benefit determinations under the Plan." (SPD 8 (emphasis added); *see* Def.'s Opp'n 2). Significantly, the SPD further provides that it is part of the Plan, stating, in one instance, that "[i]f this *policy* provides benefits under a Plan" subject to ERISA, "the following provisions apply" (SPD 2 (emphasis added)), and, in another, that "[t]he summary plan description and the policy constitute the Plan. Benefit determinations are controlled exclusively by the policy, your certificate of coverage and the information contained in this document." (*Id.*).

In light of the clear language in the SPD, Unum has the better of the argument. It is true that, in *CIGNA Corp. v. Amara,* 563 U.S. 421, 438 (2011), the Supreme Court cautioned that SPDs, "important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan" for purposes of ERISA. Even after *Amara*, however, courts have found that SPDs are enforceable if they are explicitly incorporated into their plans — even if the incorporating language appears only in the SPDs themselves. *See, e.g.*, *Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 729 (7th Cir. 2012) ("There is no reason why an employer cannot make a summary plan description be part of the plan itself."); *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[A]n insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan. Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan."); *Wenger v.*

4

*Prudential Ins. Co. of Am.*, No. 12-CV-1896 (KBF), 2013 WL 5441760, at *6 (S.D.N.Y. Sept. 26, 2013) ("An SPD may, however, be incorporated into a plan if done so explicitly."); *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 395 (S.D.N.Y. 2012) (citing *Eugene* for the proposition that an insurer can demonstrate that an SPD is part of the plan if the SPD itself notes as much "explicitly"); *see also Morgenthaler v. First Unum Life Ins. Co.*, No. 03-CV-5941 (AKH), 2006 WL 2463656, at *2 (S.D.N.Y. Aug. 22, 2006) ("The precise placement of discretionary language in a policy is irrelevant."). That is the case here, as the SPD "clearly stat[es] on its face that it is part of the Plan." *Eugene*, 663 F.3d at 1131. And there is no dispute that the SPD delegates "discretionary authority" to Unum *Group* as well as Unum. (SPD 8).

Tietjen's arguments to the contrary are unpersuasive. First, she contends that the Policy grants "exclusive discretionary authority" to Unum and thus conflicts with the language in the SPD. (Pl.'s Mem. 6). If that were the case, the language in the Policy would control and the *de novo* standard might well apply on the ground that the determinations here were made by someone other than Unum. *See, e.g.*, *Hamill v. Prudential Ins. Co. of Am.*, No. 11-CV-1464 (SLT), 2012 WL 6757211, at *3 (E.D.N.Y. Sept. 28, 2012) ("Where there is a conflict between the language of the plan and the SPD, it is the plan that controls, not the SPD."). But the Policy merely states that Unum has "discretionary authority" to determine eligibility "[*w*]*hen* making a benefit determination"; as a matter of logic, that does not preclude a different entity making a benefit determination, let alone address whether any such entity would have similar discretion when doing so. (Policy 13 (emphasis added)). Second, Tietjen contends that "[t]his specific issue was already litigated in this district and decided against Unum" in *McDonnell v. First Unum Life Ins. Co.*, No. 10-CV-8140 (RPP), 2013 WL 3975941 (S.D.N.Y. Aug. 5, 2013). (Pl.'s Mem. 1). But, separate and apart from the fact that *McDonnell* is not binding on this Court, the

facts in that case are distinguishable. Specifically, although the determinations in that case were, as here, made by employees of Unum *Group*, a separate entity, "both parties agree[d] that the benefit plan . . . explicitly granted discretionary authority *only* to First Unum" and there was no discussion of any summary plan description. 2013 WL 3975941, at *7 (emphasis added).

As a fallback, Tietjen contends that, even if Unum is otherwise entitled to deference under the terms of the Plan, the Second Circuit's decision in *Halo v. Yale Health Plan*, 819 F.3d 42, 45-46 (2d Cir. 2016), calls for *de novo* review because Unum failed to comply with ERISA's procedural claims regulations in two ways. (Pl.'s Mem. 12-16). First, Tietjen asserts that, by having a registered nurse and neurologist rather than a neuropsychologist review her claim on appeal, Unum violated the regulatory requirement that a plan must "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). (*See* Pl.'s Mem. 12-14). But Tietjen fails to explain why a registered nurse and board-certified neurologist — the latter of whom certified that she was, "by training and experience," capable of assessing neuropsychological evidence, no less (Docket No. 23-4, at 19) — were unqualified to evaluate whether her cognitive symptoms were due to a physical condition. And, even more significantly, she fails to cite any legal authority for that proposition — perhaps because the weight of authority is to the contrary. *See, e.g.*, *Wedge v. Shawmut Design & Const. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 339 (S.D.N.Y. 2014) (concluding that a reviewing nurse had the requisite "training and experience" to conduct a review of a benefits claim); *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, No. 05-CV-3297 (RJS), 2010 WL 1253481, at *16 (S.D.N.Y. Mar. 29, 2010) (noting that "there is no requirement that [the insurer] engage physicians specially trained in the diagnosis of Lyme disease to examine Plaintiff or her records" and relying instead on two

6

generalists), *aff'd*, 413 F. App'x 377 (2d Cir. 2011); *see also, e.g.*, *Tortora v. SBC Commc'ns, Inc.*, 446 F. App'x 335, 339 (2d Cir. 2011) (relying on the fact that a claim was reviewed by a neurologist and neuropsychiatrist, rather than a neuropsychologist, to conclude that it was "neither arbitrary nor capricious" for the insurer to deny benefits); *see generally Young v. Hartford Life & Acc. Ins. Co.*, No. 09-CV-9811 (RJH), 2011 WL 4430859, at *12 (S.D.N.Y. Sept. 23, 2011) (noting that "courts have eschewed such a 'hyper-technical' reading of" Section 2560.503-1(h)(3)(iii) when it comes to a physician's specialty), *aff'd*, 506 F. App'x 27 (2d Cir. 2012). Thus, Tietjen's argument that her claim was not reviewed by appropriately qualified medical professionals fails.

Second, Tietjen argues that Unum is not entitled to deferential review because it failed to follow its own internal policies when it cut off her benefits. (Pl.'s Mem. 15). In particular, she claims that, by applying the Policy's twenty-four-month "Self-Reported Symptom" ("SRS") limitation to her claim, Unum violated its internal guidelines providing that the limitation "should *not* be applied to claims arising from New York-situated policies." (*Id.* (emphasis in original)). According to Tietjen, this improper application of the SRS limitation was, in turn, a violation of 29 C.F.R. § 2560.503-1(b)(5), which requires that an insurer provide "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions are applied consistently with respect to similarly situated claimants." Significantly, however, Tiejten does not dispute that Unum had reasonable "administrative processes and safeguards" in place — which is all that Section 2560.503-1(b)(5) requires. *See, e.g.*, ERISA; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246, at 70,252 (Nov. 21, 2000) (stating that Section 2560.503-1(b)(5) "does no more than to

require a plan to formalize, as a part of its claims procedures, the administrative processes that it must already have established and be using in operating the plan in order to satisfy basic fiduciary standards of conduct under the Act"); *see also, e.g.*, *Daniel F. v. Blue Shield of Cal.*, No. 09-CV-2037 (PJH), 2011 WL 830623, at *10 (N.D. Cal. Mar. 3, 2011) ("At most, [Section 2560.503-1(b)(5)] requires 'reasonable' processes, not perfection, and does not create a violation for actions based on human error."). Whether Unum *complied* with its "administrative processes and safeguards" is a question that goes to the merits, not to what standard of review applies. *See, e.g.*, *Egert v. Conn. Gen. Life Ins.*, 900 F.2d 1032, 1035, 1038 (7th Cir. 1990) (noting first that the deferential "arbitrary and capricious" standard of review applied and only then concluding that the insurer's internal guideline was an unreasonable interpretation of the plan under the deferential standard); *Daniel F.*, 2011 WL 830623, at *7, 10 (finding that the plan at issue provided the insurer with discretionary authority and then analyzing whether the insurer violated Section 2560.503-1(b)(5) under the "arbitrary and capricious" standard); *Smith v. Med. Mut. of Ohio, Inc.*, No. 06-CV-941 (EAS), 2008 WL 780613, at *8 (S.D. Ohio Mar. 24, 2008) *aff'd sub nom. Smith v. Health Servs. of Coshocton*, 314 F. App'x 848 (6th Cir. 2009) (concluding that an insurer's "use of [a] corporate policy in evaluating Plaintiff's claim for benefits was not arbitrary and capricious" under Section 2560.503-1(b)(5)); *cf. Conkright v. Frommert*, 559 U.S. 506, 509 (2010) (concluding that "a single honest mistake in plan interpretation" does not "justif[y] stripping the administrator of deference for subsequent related interpretations of the plan").

## CONCLUSION

For the reasons stated above, the Court concludes that Unum has met its burden of establishing that the deferential abuse of discretion standard of review applies to the denial of

Tietjen's claim. Accordingly, Tietjen's motion seeking an order declaring that the appropriate standard of review in this action is *de novo* is DENIED.

Counsel shall promptly confer with respect to the next steps in this litigation and, **within two weeks of the date of this Memorandum Opinion and Order**, shall submit a joint letter detailing their views and whether a conference is necessary.

The Clerk of Court is directed to terminate Docket No. 15.

SO ORDERED.

Date: September 26, 2017
New York, New York

JESSE M. FURMAN
United States District Judge